(Muskingum County Common Pleas.)

PETER SHRUM, a Minor, by Michael Shrum, his next Friend, v. THE CINCINNATI & MUSKINGUM VALLEY RAILWAY COMPANY.

---

(1). The weight of authority is that it is not negligence per se to ride upon the platform of a railroad car.

(2). A petition which charges "negligence on the part of the defendant followed by an injury to plaintiff, affords no ground of action, unless the proper causal connection is shown to exist between the effect and alleged cause.

(3). The petition in an action for damages for injury sustained by defend-

ant's negligence, averred that plaintiff as a passenger on defendant's excursion train secured a seat for himself, but afterward resigned it to a lady, and after remaining in the aisle of the car for a time, went out on the platform on account of the overcrowded condition of the car, intending to enter another car; but finding that full, remained on the platform; that the train broke in two, whereupon the passengers in the car made a rush to the platform, and crowded plaintiff off the same, and he was injured by falling from the platform. Held: The breaking in two of the train was the direct and proximate cause of plaintiff's injury, and not the overcrowding of the cars, and it not appearing from such petition that the defendant was guilty of negligence in the breaking in two of the train the same does not state a good cause of action.

FRAZIER, J.

This is the action of Peter Shrum, by his next friend, v. The C. & M V. Ry. Co. The original petition contains two causes of action. A demurrer was interposed to each of these causes of action in the original petition, and this demurrer was sustained as to the first cause of action and overruled as to the second cause of action. There has been no pleading, no supplement, by way of amendment to this second cause of action; but as to the first cause of action, there have been amendments, and the question I have considered relates to the demurrer as to the amended first cause of action. There having been no amendment to the second cause of action, the ruling on the original demurrer is still the ruling of this court, and the demurrer as to the second cause of action will be overruled.

This amended first cause of action presents some very interesting, as well as some very strange features In brief it sets out that Peter Shrum is a minor; the action was brought by his next friend; that the defendant was operating a line of railroad as a common carrier for passengers in this county; and that on the 19th day of July, 1891, the plaintiff purchased a ticket for thirty-five cents, in consideration of which the defendant agreed to carry the plaintiff from the depot in Zanesville to the depot in Dresden, and was in duty bound to carry the plaintiff from the said depot in Zanesville to said village of Dresden. After the plaintiff had entered one of the passenger cars of defendant as a passenger as aforesaid, after all the other seats in said car and all the seats in all the other cars of the train to which said car was attached, were taken and occupied by passengers, whom the defendant had also undertaken to carry from said Zanesville to said Dresden,

and while said car and said other cars were outside of the depot in said Zanesville, the said defendant, wantonly, recklessly, carelessly, and negligently, in violation of its duty to this plaintiff, then undertook to carry, with its passengers, from said depot in Zanesville to said depot in Dresden, in said car and said other cars on said train, a great number of other persons, and more than could find standing room in said car and said other cars and said platforms thereof; that said defendant then wantonly, recklessly, carelessly, and negligently, in violation of its duty to plaintiff, otherwise permitted, directed, and caused said car, on which the said plaintiff was a passenger, and all of said other cars of said train, to become so densely crowded and packed with said other persons, as to render the passage on said car intolerable, distressing, unendurable, fatiguing, and dangerous to the health and life of the occupants thereof. Said train left said depot in Zanesville, and while on the road to Dresden, plaintiff surrendered his seat occupied by him, to a lady passenger, who was then occupying the aisle of said car. Plaintiff, after surrendering his seat, as aforesaid, because of the crowded, unendurable condition of said car, left said car, for the purpose of seeking a seat or better accommodations in the car next in front. When he reached the platform of the car in which he was riding, he discovered the seats of that car were all occupied; that the aisle of that car was so densely crowded and packed with passengers as to leave no room in the interior of said car for plaintiff or any other passenger on said train other than those at that time occupying said car. Plaintiff, because of the crowded condition of the car in which he was riding, unable to find any seat, or standing room therein, was compelled to occupy a position on the platform of said car, sustaining himself thereon by holding to the guard rail thereof. Owing to the crowded condition of the interior of said car, and the crowded condition of said other cars, so caused by the defendant as aforesaid, plaintiff was unable to find any place in the interior of said car, and was, therefore, compelled to occupy his position on said platform, with the full knowledge, consent, and acquiescence of said defendant; and that said platform then afforded plaintiff a greater degree of comfort and as great a degree of safety to his person as any other part of said train which plaintiff could then occupy. While said train was en route, as aforesaid, and while plaintiff was occupying his position on said platform, as aforesaid, without any fault on his part, the said car in which plaintiff was a passenger, as aforesaid, became detached from the car immediately in front of it, thereby causing great excitement and com-

motion among the passengers in said detached car; and because of the overly crowded condition of said car, as aforesaid, the passengers occupying the passage way in the interior of said detached car rushed out and crowded upon said platform and against the person of the plaintiff, thereby causing him to lose his hold upon said guard, violently throwing him upon the ground while said car was in motion, whereby he sustained the injuries complained of in the petition.

Now I have said that this petition presents some strange features. First plaintiff say, before the train left Zanesville, the defendant undertook to carry more passengers than could get upon the t ain, either in the car or on the platform thereof. He, by the averments of this petition, had a seat in the car, which he says became so densely packed as to render passage on said car intolerable, distressing, unendurable, fatiguing, and dangerous to the life and health of the occupants thereof. The direct averment in this petition is that, these cars were jammed full, as well as the platform. Now just how the plaintiff, after surrendering his seat, could have gotten on to a platform that was already more full than it would hold does not very explicitly appear in the petition; yet the averment is here, as the ground of negligence, the cause of his accident, that the passengers from the interior of the coach which he left, rushed out, crowded upon the platform where he was standing, rushed against him, and crowded him off. Now then, it appears that if they could rush from the interior of the car and out upon the platform against him, at that particular time the platform must have been free, so as to at least have afforded room for passengers to rush out and rush against him and crowed him off. So this cause of action in itself, it seems to me, has some very glaring inconsistencies in it.

It was urged, in the brief submitted by Judge Brasee that, in as much as the ailroad company furnished this plaintiff a seat, the company had discharged its full duty to the plaintiff, and the company would not be responsible to him if he went upon this platform after that, and was thereafter injured.

The argument of counsel for the plaintiff was to the effect that it is not per se negligence to ride upon the platform of a railroad car.

I have examined the authorities submitted on the argument and a good many others, and am satisfied that while there is some controversy about it, the weight of authority is that it is not per se negligence to ride upon the platform of a railroad car; but the authorities differ about that. Mr. Wharton in his work on Negligence, lays down a principal rule that it is negligence to ride in and upon the platform of railroad cars; it is such a dangerous place as no careful person should take. Shearman and Redfield, in their work, and the Encyclopedia, and Beach, in his work on Contributory Negligence, lay down the rule that it is not per se negligence. Mr. Beach criticizes the authorities holding otherwise.

I will merely call attention to a few of these authorities. In the 23d Atlantic, page 590, the case of Worthington v. The Central Vermont Railway Company, the syllabus is,

"Where a passenger on defendant's excursion train secures a seat for himself, but afterward resigns it to a lady, and after remaining in the aisle of the car for a time, goes out on the platform intending to enter another car, but finding that full, remains on the platform, from which he falls or is thrown off, he is guilty of contributory negligence, since he was not compelled to stand on the platform."

Now at page 592 of this same case, the authorities of this country are reviewed, and the result is that, outside of New York, the authorities are at variance, and there is a criticism here of the New York cases, pages 592, 593.

On page 593, I find the following:

'In Massachusetts, the law is, as a general proposition, that standing on the platform of steam cars when the train is in motion is prima facie negligence."

And again,

"But passengers, especially on excursion trains, must expect more or less discomfort, and must endure it rather than assume positions of danger and hazard, not provided for their occupancy, for the purpose of avoiding it. Necessity alone can warrant the assumption of such positions. If they are assumed as matter of choice and they contribute to injury, there can be no recovery. But what would constitute necessity in such cases is not easy to say. It may, perhaps, be safely said, in a case like this, when nothing is said or done by those in charge of the train to control or influence the conduct of the passenger, that the attendant circumstances must be such as not to leave the passenger free to choose, such as to coerce his action, and to compel him to assume the position as the best he could do at the time, acting as a careful and prudent man."

And again, in the 24th Atlantic, page 816, Goodwin v. Boston & M. R. R.,

"The riding upon the platform of a passenger car upon a railroad is such negligence, on the part of the passenger, as will bar his recovery for injuries sustained in being thrown from the platform."

And the court, in passing upon this case, say,

"The danger of standing on the nar-

row platform of a passenger car, while the car is moving with the usual speed of railrcad trains, is most conspicuous. No prudent man, no man ordinarily mindful of his conduct and of matters about him, would occupy such a position. The greater the speed of the train, the more imminent the danger in such a place. Thoughtful people instinctively shudder when they see a person taking such risks."

"Counsel, however, urges in this case, there were circumstances which justified the jury in declaring Goodwin's conduct to be free from fault. He calls our attention to the circumstances that the day was very hot; that the cars were dusty and uncomfortably crowded; that no trainman showed him a seat, or advised him where he could find a seat; that the conductor took his ticket on the platform, and made no objection to his standing there; and that he did not see the sign on the car door.'

It seems that there was a sign upon the platform, upon the door of the car perhaps, warning passengers not to stand there. He says he did not see that.

"Did all these circumstances combined hide, in the least, the danger—make it less conspicuous and imminent? Would they in any way tend to throw a prudent man off his guard, or quiet his apprehensions of danger? All these circumstances may have made it more agreeable to ride upon the platform in the open air than to stand inside the hot and crowded car, but they did not in the least lessen the danger, nor the appearance of danger, in so doing. That Goodwin (the plaintiff) was not ordered off the platform, would not have led him to believe it was safe to ride there. He needed no warning of such a danger. He knew the place for passengers was inside the car. The discomfort of the hot and crowded car did not make it any more prudent for him to ride upon the outside upon the platform. Within the car, with all its discomforts, was safety. Without the car was obvious peril. The safe path is often more narrow and difficult than the way which leads to destruction, but no man is excused, for that reason, from seeking the one and avoiding the other."

Now, in this case, this case I have just read, it appears that if one is compelled, or takes a position upon the platform from necessity, not from choice, perhaps the inference is, that one is not guilty of negligence in getting upon the platform of a railroad car.

Perhaps it sufficiently appears in this case, that plaintiff was compelled of necessity, to remain upon this platform after he once got on it. He did leave his seat; surrendered that to a lady; got out upon this platform; then there is an averment in the petition that he could not get back in, because the seats and the aisles were crowded full; so that, if he was not negligent in the first instance, in giving his seat to the lady and going out upon the platform, it cannot be affirmed that, under the averments in the case, he was negligent in remaining after he once got there, because it appears from the averments of the petition, that he could not do otherwise than remain there. That is one phase of the petition at any rate.

But the thing that has given me more trouble about this petition than any other is whether or not, conceding that the defendant was guilty of negligence in crowding the cars, the negligence complained of was the direct, proximate cause of the plaintiff's injury.

Now as to the matter of pleading, I desire to call attention to an authority or two.

53 Ohio St., p. 570, St. Railway Co. v. Murray.

"In an action for damages, to make such negligence actionable, it must appear that injury was directly caused thereby."

In Shearman & Redfield on Negligence, in the last edition, section 26, I find the following in the foot note, and it is a citation from Judge Cooley's work on Torts:

"When the act or omission complained of is not in itself a distinct wrong, and can only be a wrong through injurious consequences resulting therefrom, those consequences must not only be shown, but must be so connected by averments and evidence with the act or omission, as to appear to have resulted therefrom according to the ordinary course of events and as a proximate result of a sufficient cause."

And again, in Beach on Contributory Negligence, page 45, foot note,

"Pleading. The complaint in an action founded on negligence must state facts, showing that the negligence was the proximate cause."

That is from the 104 Indiana, p. 64.

And in the 16th volume of the Encyclopaedia, page 428,

"It is a maxim that the law looks at the proximate and not the remote cause of an injury.'

And in the foot note,

"Negligence on the part of the defendant followed by an injury to plaintiff affords no ground of action, unless the proper causal connection can be shown to exist between the effect and alleged cause."

"The defendant is answerable for the consequences of negligence, and not for its abstract existence."

Now then, as I have said, the question in this case is whether or not, conceding that the defendant was negligent in crowding its cars, it appears from the petition that the negligence complained

of was the direct and proximate cause of plaintiff's injury.

Now as to what a direct and proximate cause is, perhaps I need not waste the time in calling attention to authorities on that point; but was the overcrowding of this platform of the car the direct and proximate cause of plaintiff's injury?

Shearman & Redfield on Negligence say,

"The connection of cause and effect must be established,"


"And the defendant's breach of duty, not merely his act must be the cause of the plaintiff's damage."

Mr. Wharton, in his work on Negligence, says, section 138,

"It has been said that there are two views of causation, so far as concerns liability for negligence. The first view is that a person is liable for all the consequences which flow in ordinary and natural sequence from his negligence; and second, that he is liable for all the consequences that could be foreseen as likely to occur."

Then he says,

"Can we regard the independent action of intelligent strangers as something that is in conformity with the ordinary natural law, or as something that can be foreseen or pre-ascertained?"

And he says,

"This question must be answered in the negative, for the spontaneous action of the independent will is neither the subject of regular natural sequence nor of accurate precalculation by us, and if not, it cannot be said to have been caused by us."

And then, at section 155, he gives an interesting illustration, to show the necessity of instructions such as those just stated.

"A single illustration in addition to those already stated may here be given. A., B., C., D., E., and F., are standing five feet apart. A. negligently jostles B., knocking him down; B., instead of recovering himself, falls on C.; and C. falls on D.; and D. in the same way falls on E.; and E. on F. A., let us suppose, is a rich man. F. sues A. naturally preferring to select him who is able to pay as the party to redress his hurt."

Then he says, "Why go back to A.?" I do not care to read further, but he says, 'The person who last caused the injury is the responsible party, and the only relief from the absurdity of such a proposition is in holding that the causal connection is broken by the intermediate negligence of a responsible independent agent."

Now, we all remember very well the famous squib case, where a lighted squib was thrown into the market place among the wares of another, who caught it up and threw it upon the table of another, and then it was thrown by him and struck the plaintiff in the eye and put it out. There it was argued by no less a person than Blackstone, that the man who last threw the squib was the person who ought to be held liable, but the court held that in as much as these intermediate persons were acting through fright, and to that extent perhaps under compulsion, they were not responsible for the act of throwing the squib. It was the act of self preservation of life or property from danger, an act under the compulsion of the moment, and so they held in that case, that the fellow who first threw the squib was liable to the party whose eye was put out.

But it appears from this petition, that there was another cause. There was a breaking of the train, and that that acted upon the persons in the interior of the car, and that they, through the commotion caused by the breaking of the train, rushed out from the interior of the car, and rushed upon and against the person of the plaintiff, and threw him off the car, and that he was injured.

Now then, it seems to me that the true theory of this case is that, here was the intervention of a passenger or of passengers (that appears from the averments of this petition), an undoubtedly responsible human agency, who caused this injury. It was not the mere overcrowding of the car that brought about this injury. If something else had not happened, this injury never would have happened.

Now take this New York case, 118 N. Y., p. 556, the case of Lehr v. the Railway Co. I might state here that one paragraph of the opinion is in this case,

"It cannot be held as matter of law that a passenger who surrenders his seat when the car is crowded to one less able to stand, thus himself contributes to an injury caused by the company's negligence."

Now, in this case, the plaintiff got upon a street car that was crowded and full, and the platform was crowded and full. He gave his wife the seat he had, and as I understand the case, got off at the rear platform, and walked around on the railing or side of the car, and got to the front platform, and he found that crowded full, and the report says, after riding in this position for a short distance, a movement of the passengers on the platform broke the hold of his right hand, which he was unable to regain, and thereupon he was forced, by the pressure of the crowd, from his place, and fell underneath the car. And again further on in the same report, it clearly appeared that the defendant attempted to carry more passengers than could sit or stand in the cars; that both

platforms and other places were full to the utmost capacity. The action of persons so crowded together and the great force which they exercise almost unconsciously on each other is understood by carriers of passengers and their employes.

But now, in this case, this young man was not crowded off after the manner alleged in this New York case. He was not crowded off by a mere involuntary movement of the crowd of passengers, or swaying motion. Can it be affirmed that even though this company was negligent in crowding these cars, the over-crowding of them was the direct and proximate cause of plaintiff's injury? It seems to me the very reverse of that appears upon the face of this petition. He was on the platform of the car. The aisles, it says, were crowded, and yet these people rushed from the interior of the car, out upon the platform and crowded him off. As I have said at the outset, it could not have been crowded at that particular time, because the people from the interior of the car could not have rushed out and rushed against him had it not been otherwise.

Now it seems to me that the immediate cause of plaintiff's injury here was the rush of people from the interior of the car, out upon the platform and against him, crowding him off, but, as I have already said, that would not have happened had not something else have happened: (He would probably have been riding yet); and that the over-crowding of the cars is not the direct and proximate cause of plaintiff's injuries in that regard. If the over-crowding of the cars caused the injury, it was not necessary to allege that the breaking of the cars caused the passengers to rush out. If the mere over-crowding of the cars brought it about, then that is the direct and proximate cause of his injury, and it was sufficient to allege that, and that only.

Now then, it is not alleged in this petition, or in this first cause of action, that the defendant was guilty of negligence in the manner in which the car broke, or as to the breaking of the car. In the second cause of action, that is alleged; and for that reason, I think this second cause of action states a good cause of action, and being alleged in that way, that the breaking of the train in two then becomes the first direct and proximate cause of this injury. Just as in the squib case, that act operating upon the people in the car, causing them to rush out and against the plaintiff, brought about the injury. So that, the breaking of the car in two is the direct and proximate cause of this injury, and it does not result from the mere fact of the over-crowding of the car. That is only a remote cause, or a

[COPYRIGHT, 1901, BY CARL G. JAHN.]

VOL. 8—3

mere condition, and not a sufficient or efficient cause of the injury. That would have happened, in all human probability, if there had not been a soul standing in the car. I remember very well going to Columbus one morning on the old C. & S. R. R., only five passengers in the car. The engine got off the track, and the first impulse of everyone was to get off. I ran to the rear end of the car and jumped off while the car was still in motion.

I find, as I said, that it does not appear from this petition, that the defendant was guilty of negligence in the breaking of the car. That not being alleged as a negligent act, the petition does not state a good cause of action. The demurrer to it will have to be sustained.